Territorial Law Library

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM ) CRIMINAL CASE NO. CF0246-08
)
)
)
vs. ) **DECISION AND ORDER**
) **(Defendant's Motion to Dismiss; or in the**
) **Alternative Order to Allow Interview of**
) **Witnesses; Disqualification and Recusal of**
MANNIX FRANK SONGENI, ) **the Prosecutor)**
)
Defendant. )
)
)

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on November 5, 2009, for a hearing on Mannix Frank Songeni's ("Defendant") Motion to Dismiss; or in the Alternative Order to Allow Interview of Witnesses; and Disqualification and Recusal of Prosecutor. Attorney Rebecca Warfield appeared on behalf of Defendant. Attorney Jonathan Quan appeared on behalf of the People of Guam ("the People"). Upon review of the evidence, oral and written arguments, and legal authorities presented by both attorneys, the court hereby issues this Decision and Order.

## BACKGROUND

On October 30, 2009, Defendant filed a Motion to Dismiss; or in the Alternative Order to Allow Interview of Witnesses; Disqualification and Recusal of the Prosecutor. Defendant

The People of Guam vs. Mannix Frank Songeni, CF0246-08                                          Page 1 of 8
Decision and Order – Motion to Dismiss; or in the Alternative Order to Allow Interview of Witnesses; and Disqualification and
Recusal of Prosecutor

alleged that the People informed Oropa Weires – a potential witness – not to speak to anyone about the case because they will try to trick and confuse her. Defendant's Motion at 2 (October 30, 2009). The People filed an Opposition to Defendant's Motion to Dismiss. The People flatly denied Defendant's accusation. The People's Opposition at 2 (November 4, 2009). The Court now addresses Defendant's Motion to Dismiss; or in the Alternative Order to Allow Interview of Witnesses; and Disqualification and Recusal of Prosecutor.

**DISCUSSION**

**I.     Motion to Dismiss**

Defendant argued that the People violated the American Bar Association (ABA) Cannons of Professional Ethics when a the Prosecutor, Sally Tobin ("Ms. Tobin"), advised a witness not to speak with anyone at the Public Defender Service Corporation's ("Public Defender") office. Defendant's Motion to Dismiss at 2 (October 30, 2009). A prosecutor's duty to prosecute a person charged with a crime does not authorize the prosecutor to frustrate, by improper means, the legitimate efforts of the defense to defend the case. Clearly, efforts of the defense to interview prospective witnesses are legitimate activities of a defense attorney. See ABA Standards for Criminal Justice at 4.53-4.55. "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give the defense information which such person has the right to give." Standards for Criminal Justice, Standard 3-3.1(c). The pivotal question is whether it is improper for a prosecutor to impede defense efforts to interview prospective witnesses by instructing them not to talk to the defense attorney.

Although no statute or rule expressly forbids such prosecutorial conduct, the Court finds that both statutory law and disciplinary rules, examined collectively, leave little doubt of Guam's

policy of non-interference with defendant's access to witnesses. Title Eight of the Guam Code Annotated, Section 70.10 requires the prosecuting attorney, prior to trial, to disclose to the defendant materials of various kinds including "the name and address of any person whom the prosecuting attorney intends to call as a witness at trial . . . ." The section continues by requiring the prosecuting attorney to disclose the written or recorded statements of such witnesses or memoranda of their oral statements. Id. It is hardly consistent with the policy of this section to require the prosecutor to disclose to the defense the "names and addresses" of witnesses, on the one hand, and on the other hand, to authorize the prosecutor to encourage the witnesses not to be interviewed concerning legitimate defense questions bearing on the alleged crime.[1]

The People and Defendant have the right to interview witness before trial. People v. Hannon, 19 Cal.3d 588, 601 (Cal. 1977) ("[w]itnesses and potential witnesses belong to neither side to an adversary proceeding. Within constitutional limitations, access to potential witnesses should remain open to all parties in a legal controversy."). Thus, a prosecutor has no right to instruct witnesses not to talk with a defendant or defense counsel. Clark v. Superior Court, 190 Cal.App2d 739, 743 (Cal. App. 1961). A prosecutor equally is not obligated to encourage witnesses to consent to being interviewed by defense attorneys, or that it is improper for a prosecutor to advise prospective witnesses of their right to refuse to submit to a pretrial interview by the defense. United States v. White, 454 F.2d 435, 439 (7th Cir. 1971).

A defendant, having the right to compulsory process for obtaining witnesses to testify in his behalf, also has in certain instances to the proper exercise of judicial supervision, to ascertain what their testimony will be. Walker v. Superior Court, 155 Cal.App.2d 134, 140 (Cal. App. 1957). This does not mean that a court has the authority to compel a witness to submit to an

---

[1] Oropa Weires is listed as a witness in both the People's Witness List and the Defendant's Witness List.

interview where the witness objects. Id. It simply means a defendant is free to interview a witness where the witness is willing. People v. Mersino, 237 Cal.App.2d 265, 269 (Cal. App. 1965); United States v. Long, 449 F.2d 288, 295-296 (8th Cir. 1971). Where the witness informs one party of his or her knowledge of a case and refuses to speak to the other party's representative, the remedy is impeachment of the witness' testimony on the basis of bias. Hannon, 19 Cal.3d at 601. The Court determines that a prosecuting attorney should not improperly interfere with the effort by the defense to interview prospective witnesses by instructing them not to talk to the defense attorney.

### a. The People did not Improperly Interfere with Defendant's ability to Interview Oropa Weires

Having determined that it is improper for a prosecutor to instruct a witness not to be interviewed by the defense, the Court must now consider whether the People violated this rule. Defendant contends that the People committed prejudicial misconduct in advising Oropa Weires not to talk to Defendant's attorney and investigator. Defendant's Motion to Dismiss at 2 (October 30, 2009). An examination of the record reveals that the evidence would not support, as Defendant maintains, a finding that the Ms. Tobin told Oropa Weires not to talk to Defendant's attorney and investigator.

On October 27, 2009, Ms. Tobin, Maria Apuron ("Apuron") and Albert Manley ("Manley") visited Oropa Weires at her home in Talafofo because Oropa Weires did not show up for a scheduled meeting. Motion Hearing at 10:49 a.m. and 10:58 a.m. (November 5, 2009). Oropa Weires informed them that a tall-bald Chamorro man from the Public Defender's office spoke to her and her son, and informed her that the Attorney General's office was supposed to pay her and her children to testify. Id. at 10:49 – 10:50 a.m., 11:00 a.m., and 11:12 a.m.. At this meeting, Oropa Weires asked if she could speak with the Victim and Asako Micky, and Ms.

Tobin informed Oropa Weires it was not a good idea. Id. at 10:32 a.m., 10:50 a.m., and 10:59 a.m.. Ricardo Taimanao ("Taimanao"), an investigator at the Public Defender's Office, also told Oropa Weires not to speak to the Victim and Asako Micky. Id. at 10:51 a.m..

Ms. Tobin told Oropa Weires that people from the Public Defender's officer may want to interview her. Id. at 10:59 a..m.. Oropa Weires was informed to inquire to see identification because an investigator from Public Defender's office allegedly stated that he was from the Attorney General's office. Id. at 10:52 a.m., 11:01 a.m.. Ms. Tobin told Oropa Weires that if she did talk to people from the Public Defender's officer to tell them the truth. Id. at 10:59 a.m.. Ms. Tobin, Apuron and Manley did not inform Oropa Weires that she was precluded to talk to anyone at the Public Defender's office, and that she would get in trouble if she did talk to anyone at the Public Defender's office. Id. at 10:35 a.m., 10:53 a.m., and 11:00 a.m.. Oropa Weires was not told that she was going to be tricked by anyone at the Public Defender's officer. Id. at 11:08 a.m..

On October 30, 2009, Oropa Weires went to the Attorney General's office and met with Ms. Tobin and Manley. Id. at 11:02 a.m.. Ms. Tobin and Manley then transported Oropa Weires to her home so that they could meet with her sons. Id. At this meeting, Oropa Weires was not advised not speak to anyone, was not told that she would be in trouble if she spoke to anyone, and was not told that Public Defender was going to trick her. Id. at 11:02 and 11:08.. Manley told Oropa Weires not have the Victim and her two children speak to each other in order to prevent them from sharing stories and getting confused. Id. at 11:09 a.m..

After speaking to Ms. Tobin, Apuron and Manley, it was Oropa Weires' understanding that she could not talk to anyone about the case. Id. at 10:27 a.m.. The People did not advise her that she could not speak to anyone. Id. at 11:02 a.m. and 11:08 a.m.. The People argued that they

did not have any control what Oropa Weires understood. Id. at 11:16 a.m.. The People admitted that Ms. Tobin told Oropa Weires to inquire to see identification from people who wanted to talk to her about the case. Id. at 10:59 a.m.. Oropa Weires stated she was scared because Ms. Tobin was speaking loudly. Id. at 10:29 a.m.. Oropa Weires also stated that the People did not inform her that she would get into trouble if she spoke to anyone. Id. at 10:35 a.m. Oropa Weires did not want her children to speak to Pablo Aglubat ("Mr. Aglubat") and Taimanao because she was going to tell them what the boys would tell them. Id. at 10:39 a.m..

The Court determines that the People did not inform Oropa Weires not to talk with anyone or did not inform Oropa Weires would get into trouble if she did speak to anyone. It was Oropa Weires who understood that she would get into trouble if she spoke to the Mr. Aglubat and Taimanao. Oropa Weires is the person who refused to speak to the Public Defender. Therefore, the Court will deny Defendant's Motion to Dismiss and Motion for Disqualification and Recusal of Prosecutor.

### b. Defendant Failed to Prove that Alleged Misconduct was Flagrant and Prejudicial

Assuming arguendo that the People had informed Oropa Weires not to speak to Mr. Aglubat and Taimanao, misconduct alone does not suffice for the Court to grant a dismissal of the case. In order for a dismissal to be granted as a sanction for prosecutorial misconduct, the misconduct must be "both flagrant and prejudicial." People v. Lujan, 1998 Guam 28, ¶ 18. Defendant has not provided any evidence that they suffered any prejudice. In fact, Taimanao spoke to Oropa Weires on a prior occasion – before Oropa Weires claimed the People had told her not to speak to anybody – and that is how he recognized her when she exited a mass transit bus. Motion Hearing at 10:44 a.m. (November 5, 2009). Taimanao testified on that occasion he was able to interview Oropa Weires and her children. Id. Taimanao also testified that he invited

Oropa Weires to the Public Defender's office in order that Oropa Weires could prepare a statement. Id. at 10:45 p.m. Taimanao had previously spoken to Oropa Weires on the telephone. Id. Oropa Weires never showed up to prepare a statement. Id. The Court determines that Defendant has failed to demonstrate that the People's alleged misconduct was "both flagrant and prejudicial." See Lujan, 1998 Guam at ¶ 18. Therefore, the Court will deny Defendant's Motion to Dismiss and Motion for Disqualification and Recusal of Prosecutor.

## II.     Motion for an Alternative Order to Allow an Interview of Witness

Defendant asked the Court, if dismissal is not granted, to issue an order to allow an interview of Oropa Weires. A court does not have the authority to compel a witness to submit to an interview when the witness objects. Walker, 155 Cal.App.2d at 140. Defendant is free to interview Oropa Weires if she is willing. Mersino, 237 Cal.App.2d at 269; Long, 449 F.2d at 295-296. If she is not, it is Oropa Weires' right to refuse. See Marino, 87 Micc.2d at 543. This does not deprive Defendant from exercising his Sixth Amendment right to confront adverse witnesses and subpoena Oropa Weires if she still refuses to speak with Defendant's attorney and investigator. See Taylor v. Illinois, 484 U.S. 400, 409, 108 S.Ct. 646, 653 (1988) ("The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact."). Therefore, The Court will deny Defendant's Motion for an Alternative Order to Allow an Interview of Witness.

//

//

//

//

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss, DENIES Defendant's Motion for an Alternative Order to Allow Interview of Witnesses; and DENIES Defendant's Motion for Disqualification and Recusal of Prosecutor.

SO ORDERED this _/8_ day of ___Nov___, 2009.


HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

Dated at Hagatna, Guam

**NOV 18 2009**

*Enrique F. Aflague, Jr.*
Deputy Clerk, Superior Court of Guam